The clerk has reported on the day calendar, and there's one case that's off because of weather concerns, but otherwise we're ready to proceed with the United States v. Zhang. Good morning, Your Honors. I'm Richard Levitt. I represent Mr. Zhang. The singular question in this case concerns whether or not there were multiple conspiracies as a matter of law, and whether if there were, Mr. Zhang thereby suffered prejudice. Could I interrupt at this point? So is Mr. Zhang's case related to Mr. Huang? It has no relationship other than some of the, I think the victim may have been the same, but it's otherwise unrelated. He's got nothing to do with this. The victims were different. I'm sorry? I thought the victims were different. There's some overlap, but it has zero to do, I haven't focused on his case, has zero to do with my case. It's completely unrelated to my case. Why were they both tried in Judge Ammon's courtroom together? They had been indicted together. I had made a motion to sever. The severance was granted. For some reason the government has chosen to write both appeals in the same brief, but I have nothing to do with that whatsoever. So is your multiple conspiracy allegation, does that concern Mr. Huang at all or no? No, as far as I know. Okay. Just wanted to confirm. Again, I just haven't focused on his case. That's why I never met him. No, and that's correct. With regard to the multiple conspiracy issue, it's very important to understand this is not a question of whether or not there was a withdrawal by Mr. Zhang from the conspiracy. It's only a question of multiple conspiracies. And these conspiracies are two hubs on a wheel, excuse me, are two spokes on a wheel that had a hub, which was Billy Chen, who was the instigator and organizer. And then you had one spoke, which was Mr. Zhang and his uncle by marriage, whose name was Tai Bo. And then when Mr. Billy Chen, the hub, stopped working with my client, stopped working with that spoke, a couple of months later he introduced a new spoke. And that spoke consisted of an old friend of his from his immigration days named Cash. And Cash is henchman. But during that period, even after a new spoke was introduced, didn't your client in the same period continue to try to get repayment of the debt? Yes, and that's why I'm not arguing a withdrawal from the initial conspiracy. That's not my argument. The only issue is whether or not this new conspiracy, which started two months after the hub of Billy Chen stopped working with my client and hired Cash and his two henchmen, whether or not that's a separate conspiracy. Why is it unreasonable to see it as simply the addition of a new person and a new way of ‑‑ towards the same purpose? Right, because what the cases look at is whether or not there was mutual dependence and assistance between the persons in one spoke and the persons in the other spoke. In this case, my client, Mr. Zhang, he didn't know that the people in the other spoke existed. He had no contact with them. They entered the scene two months after the hub, Billy Chen, stopped working with my client completely. There was no agreement that my client would get any money if Mr. Chen and Cash and Cash's two henchmen had been successful. They didn't know they existed. They could have been on different worlds. I'm not so sure it's a wheel conspiracy, but if it is, why isn't the rim of the wheel the collection of a debt from the same person? Because that's not what the rim means in the cases. The rim doesn't mean that you have a similar goal. I mean, you may have had in Berger or Katiakos, well, in Berger, an effort to use counterfeit notes in order to obtain things of value. You could say, well, the use of the counterfeit notes to obtain things of value is somehow a rim, but the court said no, it's not. And the same thing in Katiakos. But they're not the same victims. In the wheel conspiracies you're talking about, you've got somebody doing insurance fraud and they're defrauding this insurance company and that insurance company and so forth. In this conspiracy, it's a little bit different. You've got people all working toward a central goal, which is why I don't really think it's a wheel conspiracy. Well, but that was the same issue in Katiakos. In Katiakos, what they were doing was obtaining loans from the national ‑‑ they were obtaining loans under the National Housing Act. From different institutions. Well, but they were ‑‑ except they were still defrauding the government under the National Housing Act. The rim that's spoken of is not the goal of obtaining money from the same person. The rim that we're speaking of is whether or not there was some kind of interrelatedness and interdependence and assistance between the members of each of the spokes of the wheel. There was no knowledge of the members of one spoke, of the members of another spoke. They didn't talk. They didn't know they existed. There was no mutual dependence. Why do we have to think about this as a wheel? Why can't we think about it as simply a conspiracy of a bunch of people to collect a debt wrongfully from one person? Because that's not what it is. It is a classic. It could not be a more classic wheel conspiracy because you have a hub, which is Billy Chen. You have the first spoke, which consists of my client and Ty Bow. You have the second spoke that starts two months later, consisting of Cash and his henchman, and you'd have zero. You have nothing that connect those two spokes along a common rim. Zero. So it's a classic wheel conspiracy without the rim. But before I finish up, there are two points I'd like to make with respect to prejudice. There are two forms of prejudice here. One form of prejudice is that the second incident that did not involve my client and concerned people who he didn't know except for the hub, it is a far more scary and violent act. And you have the tape recording where the victim is kind of shrieking into the phone in a very scary way, and it's such a high-pitched voice that the police mistake him as a woman. But beyond that, beyond the fact that that second incident provided the only actual corroboration for the testimony with respect to this extortion, beyond that, what the government did, and they did it very cleverly, was they said this was a predictive event. In other words, you know that Mr. Jang was involved in this because he had said that if you don't give me money, somebody may kidnap you. And so the government argued this was the fulfillment of the promise. So in other words, they used the second incident, which Mr. Jang knew nothing about, in order to prove the first incident. So for those two reasons, because it was a far more startling and scary event, which corroborated the only corroboration for the extortionate intent of my client, and because they used it predictively, Mr. Jang was prejudiced. Thank you. Thank you, Mr. Levitt. Ms. Moore. May it please the Court, my name is Nadia Moore for the United States. Jang claims that actions of his co-conspirator, Billy Chen, and three of his associates Excuse me, Ms. Moore, before you get underway, could you just confirm to me again that Jang and Hwang are separate cases, separate conspiracies, separated by two years, and although the government briefed them together and they were both indicted together, they were talking about separate conspiracies, is that right? That's correct. Okay, thanks. They had a common co-conspirator, which is why they were charged together initially, but they were separate conspiracies, and this is unrelated to Mr. Hwang's extortion. Jang claims that the actions of his conspirator, Billy Chen, and three of his associates on December 12, 2013, were part of a conspiracy separate from the extortionate collection of credit conspiracy of which Jang was a member, and that evidence of those actions taken in December 2013 were improperly admitted at his trial. He is wrong. The evidence of the trial showed the existence of a single conspiracy to collect a debt from Guo by the use of violence and threats of violence. There was one goal that the men sought out to carry out by one set of means. So let me ask about that. I mean, it wasn't clear to me that the actions undertaken by Mr. Jang, were Jang, right? Yes. Comprised or anticipated violence of any sort, whereas it did seem that after the new member was added in Thai Bo and the Dark Society, references became prevalent that the prospect of violence was much clearer. Why isn't it reasonable to see those as two separate conspiracies anticipating different means? Thai Bo was actually involved in the October 29th incident involving Jang. Chen, Thai Bo, and Jang met with the people who claimed to be owed the debt, and they discussed how they would collect this debt from Guo. It was with Jang, the appellant here, that Thai Bo and Chen discussed speaking nicely to him at first, and then if that didn't work, invoking individuals in China to harm his family. Thai Bo, the member of the Dark Society, was Jang's spoken spirit, and I don't believe that Mr. Levitt is claiming otherwise. It was Thai Bo that Jang actually referred to in telephone calls after they went between October 30th and November 15th, 2013. When Jang repeatedly calls the victim, he tells him, you owe this money. I came here with a member of the Dark Society. The victim understood what that meant, that they carried out kidnappings and were violent individuals, and it was with Jang that those threats and invocations of the Dark Society were made. It was not the separate December incident involving Jang. So you reject your opponent's characterization that the addition of violence was something unforeseen? Absolutely. Chen testified at trial that he had spoke with Jang and Thai Bo and that they discussed that this is how they were going to collect this money if he didn't acknowledge the debt and provide it to them initially, that they were then going to have Jang reach out to individuals in China and, quote, unquote, take care of his family there, that they were going to use violence to collect these debts. Do you agree that this is a real conspiracy? I don't at all. In a hub-and-spoke conspiracy, at each spoke there's a distinct illegal end. For instance, in Berger, Katz agreed with Rice to use false notes to purchase rings, whereas he separately agreed with Jones and Berger to use these false notes to pay for tradesmen. In each of those instances, there was a distinct illegal end, getting the rings by fraud, paying the tradesmen by fraud. Similarly, in Kotikos, one individual agreed with numerous other individuals to obtain loans by fraud. Each loan obtained by fraud, there was a distinct illegal end. Here, there was but one illegal end that all the conspirators agreed to carry out by one scheme. They all sought to collect the money from Guo by violence and threats of violence. And the issue here is the admission of evidence, right? So if we find that there were two separate conspiracies, is there any other way that that evidence comes in? I think that the evidence, I mean, Mr. Levitt spends a lot of time discussing this 911 call, and I think that the 911 call would have come in even if you had disallowed evidence of saying this is an additional conspiracy, because the victim, when these additional men come in, he believes that Jang has made good on his promise that the dark society is going to come and commit violence against him and his family for not repaying this debt. In fact, after he calls the police, 911 is called, everyone is removed from the scene. The victim calls Jang to say, why did you send these men after me? I already paid you $2,000. I already thought this was resolved. If there's no further questions, we'll rest on our papers. Thank you. I didn't mean to give the impression that there was no evidence that with regard to the first incident there were threats of force. There was testimony that there were threats of force. The point is, though, that the second incident, the 911 tape, the conduct involved was the corroboration, which should not have been admitted, was the corroboration of the threats of force. It was improper corroboration because it had absolutely nothing to do with Jang. The government argues that this is not really a hub-and-spoke conspiracy like in Berger because in Berger the goal was on the one hand to buy rings and on the other hand to pay tradesmen, but that's the distinction without a difference. I mean, if that were the case, then there'd really be absolutely no thing as a real conspiracy without a rim. The goal of getting money from a victim is not what creates the rim. What creates the rim, according to this Court's decision, is whether or not there was mutual dependence and assistance. There was zero mutual dependence and assistance. They didn't know each other. They had nothing to do with each other. There was no guarantee that one would benefit from the other's success. They were ships passing in the night. And that's classically what the Court discusses or identifies as a real conspiracy lacking a rim. Mr. Levitt, just a thing about the procedures in the district court, the proceedings. You indicate in your brief that for reasons not relevant to this appeal, your client's trial was severed from that of his co-defendants and he therefore proceeded to trial alone. Is there something about the severance that we ought to know? Not at all. The government had indicted numerous persons because there was one or two people in common, but the conduct itself was completely unrelated from group to group. And so I made a motion to sever saying this has nothing to do with my client. So the severance was granted. We went to trial by ourselves. And then I think Ms. Moore tried a second case the following week. Thanks very much. Thank you. Thank you very much. We'll reserve decision.